This action in damages grew out of a collision between plaintiff's Plymouth coupe automobile and the Ford truck of Henry Anders, on a narrow bridge on the Monroe-Jonesboro highway in Ouachita Parish, in the daytime. The coupe was traveling southerly and was being driven by the plaintiff. The truck was going northerly and was being driven by J. L. Anders, minor son of Henry Anders. The bridge is thirty-nine *Page 114 
(39') feet long, and sixteen (16') feet wide between curbs. Plaintiff was seriously injured from the impact and his car so badly damaged that no effort was made to repair it. The truck was also damaged to some extent, but its occupants escaped injury.
Plaintiff seeks to recover from Henry Anders and his said minor son, an amount for physical injuries to himself and for the damage done his automobile. The father is sought to be held liable for the alleged tort of his son on two grounds, to-wit:
1. That the son was at the time of accident acting as the agent of his father, and was on a mission for him, and
2. That the son was an unemancipated minor, then living with his father.
For a cause of action, plaintiff alleged that he approached and entered upon the bridge at a slow rate of speed and on his proper side thereof; that when his car had almost cleared the southerly end of the bridge its left front end was run into by said truck; that as it approached the bridge, the truck was moving at a speed in excess of fifty miles per hour and that when about thirty feet from the bridge its brakes were suddenly applied which caused the rear end thereof to slide over and beyond the center of the highway; that the "said J. L. Anders then began to lose control of said truck"; that as the rear end of the truck began to slide back to its proper side of the highway, the front portion thereof went to its left and crossed the middle line which caused it to collide with the car.
The following acts of negligence are accredited to the truck's driver and are assigned as the causes of the accident, to-wit:
Excessive speed, reckless driving, not keeping a proper lookout, losing control, allowing the truck to cross the middle line, and tardy application of the brakes.
Defendants excepted to the petition as disclosing neither a cause nor a right of action against the minor, J. L. Anders. They deny that the accident happened from any act of negligence on the part of J. L. Anders, and affirmatively aver that to the negligence and carelessness of plaintiff it should be ascribed. They specifically charge to him negligence in the following respects, to-wit:
Driving upon the bridge after it had been preempted by the truck; not staying on his side of the bridge; not stopping the coupe after seeing, or by the exercising of ordinary care he should have seen, the hazardous situation that confronted him; and driving without adequate brakes. Defendant, Henry Anders, reconvened and sued for the damage caused the truck; and, in the alternative, pleads the negligence of plaintiff in the respects named, in bar of recovery by him.
Plaintiff prevailed below and from a judgment in his favor, the defendants appealed.
The exceptions interposed on behalf of J. L. Anders, based upon the fact of his minority when the accident occurred, are not well founded. A minor not judicially emancipated or who has not attained that status by marriage, may be held liable in damages caused by his offenses or quasi offenses. Civil Code Articles 1785, 1874, and 2227.
Article No. 2318 of the Civil Code provides that fathers are responsible for the damages done by their minor or unemancipated children residing with them. In the present case it is contended that because J. L. Anders was working for a salary for one other than his father, and provided himself with clothing and incidentals from the salary, although living with his father and dependent upon him for subsistence, the mentioned article is not applicable. The position is not tenable. The only prerequisite to the father's liability is that the minor reside with him.
The facts of the case negative the allegation that at the time of the accident J. L. Anders was on a mission as agent for his father. It was a holiday. He borrowed his father's truck, picked up his two friends for a ride, and all were on a pleasure jaunt. The fact that he agreed to bring his father a small quantity of ice from a factory in West Monroe did not, for the trip, create the relationship of principal and agent.
There were four persons who at close range witnessed the collision, towit: plaintiff, J. L. Anders, another young man and *Page 115 
Miss Sue Nalley, who were guests in the truck. Miss Nalley testified for the defendants. The other young man did not testify. Several other persons, distant from two hundred to three hundred yards from the locus of the accident, appeared as witnesses for one side or the other, but on account of remoteness from the scene, their testimony, in our opinion, contributes very little toward a solution of the factual issue tendered.
Plaintiff's testimony follows closely the allegations of the petition with respect to how the accident happened, a paraphrase of which we have above given.
J. L. Anders and Miss Nalley testified that both vehicles came to a dead stop several feet before reaching the bridge; that having observed plaintiff's action in this respect, Anders assumed that he accorded to him the right to first enter upon the bridge, and laboring under this belief he started forward and had reached about the center of the bridge when plaintiff began to advance upon it; that the collision was caused by plaintiff allowing the left front portion of the car to cross over the middle line of the bridge.
The testimony on the subject is somewhat conflicting, but we have reached the conclusion that plaintiff drove upon the bridge first and had neared the opposite end when the accident occurred. Both vehicles, after the impact, rested upon the bridge. Plaintiff's car, being the lighter, was knocked against the concrete rail.
The accident was investigated by a traffic officer who arrived at the scene some twenty minutes after it happened. The truck had been backed off of the bridge to allow traffic to pass, but plaintiff's car was still thereon. This officer made close examination of the locus, including deposits of dirt from the vehicles, due to the impact. His testimony, in view of the otherwise conflicting testimony, is of considerable importance. He testified in part as follows:
"Q. From your investigation, in your opinion, where were the left hand sides of the two vehicles with reference to the black line going down the center? A. Well, that is a narrow bridge. It is very narrow, and it looked to me like that both vehicles were trying to stay on their side but the bridge was so narrow 'til it kind of forced them to come in, you know, towards center a little bit, and both left front wheels caught the impact.
"Q. Well now, which car in your opinion, was on which side of the black line? A. Well, from the way it looked, it looked like both of them was just about hugging the black line, trying you know to keep from scraping the sides of the bridge.
"Q. From what you saw there, then in your opinion it looked like that both left front wheels of the vehicles were near the center line? A. Yes, sir."
One witness for plaintiff, who was some two hundred yards away, testified:
"Q. Well, which vehicle entered the bridge first? A. Well, it looked to me like they both entered about the same time. It looked to me like one was just as much to blame as the other one was."
Another witness some three hundred yards away, who saw the collision, testified as follows:
"It looked like the truck pulled on up partly on the bridge and all of a sudden the car then shot on the bridge and they met about the center after the car hit the curb on the right side and went into the truck on the left. It throwed (sic) him over into the truck."
The description given by plaintiff of the movements of the truck immediately prior to the collision does not sound reasonable. We realize that when brakes are out of adjustment and are suddenly applied, a vehicle going at a rapid speed, especially one of light weight, will execute odd movements, but the testimony shows the brakes of the truck to have been in perfect condition.
We are inclined to believe that neither vehicle came to a dead stop prior to going upon the bridge. Plaintiff says they did not. Each vehicle had the right to drive upon the bridge when and as it did. The situation, however, was such as to require the utmost care of the drivers. Any lack of care by either or both meant trouble for one or both. Each vehicle was about six feet wide. Each had a lane of travel *Page 116 
of eight feet, and when a reasonable margin between each vehicle and the concrete railing is allowed, it becomes obvious that each had a very narrow space along the center line on which the left wheels could travel.
The record in this case is not lengthy. We have given to the conflicting testimony a most diligent study in the hope of being able to our own satisfaction and to do justice in the case, to determine by and through whose fault the accident occurred. Our efforts have not been productive of satisfactory results. The fundamental rule that a plaintiff must make out his case by a preponderance of the evidence has to be invoked and it determines the question of liability tendered in the case. We think plaintiff has failed to sustain the burden of proof. This applies equally to the reconventional demand.
Therefore, for the reasons herein assigned, the judgment from which appealed is reversed, and this suit is dismissed at plaintiff's cost. The reconventional demand is rejected and also dismissed.